UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
JOSEPH TIGANO, III,

                        Plaintiff,

           - against -

UNITED STATES OF AMERICA,
TERRANCE P. FLYNN, in his individual
capacity as the U.S. Attorney for the Western
District of New York, WILLIAM J. HOCHUL,
JR., in his individual capacity as the U.S.
Attorney for the Western District of New York,
JOHN/JANE DOE #1, in his/her individual as
an employee of the United States Marshals
Service, and JOHN/JANE DOE #2, in his/her
individual capacity as an employee of the Court
Reporters of the Western District of New York,

                      Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-3337 (PKC) (PK)

PAMELA K. CHEN, United States District Judge:

        This case arises out of the seven-year pre-trial detention of Plaintiff Joseph Tigano, III.  On

January 23, 2018, after ordering Plaintiff released, the Second Circuit issued a decision finding

that his right to a speedy trial had been violated by this extraordinarily long pre-trial period.  After

the Circuit reversed Plaintiff's conviction, Plaintiff brought this suit under the Federal Tort Claims

Act ("FTCA"), 28 U.S.C. § 2674 *et seq.*, and *Bivens v. Six Unnamed Known Agents of Fed. Bureau*

*of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"), against the United States of America, Terrence P.

Flynn, and William J. Hochul, Jr., U.S. Attorneys for the Western District of New York

(collectively, "Defendants").[1]  Defendants now move to dismiss Plaintiff's Amended Complaint.

For the reasons set forth herein, the Court grants Defendants' motion to dismiss.

---

[1] The Court notes that although the federal criminal prosecution out of which this FTCA
action emanates occurred in the Western District of New York, venue is proper in this district

## BACKGROUND[2]

### I.  Factual Background

The Amended Complaint, as well as the Second Circuit's decision in *United States v. Tigano,* 880 F.3d 602, 605–10 (2d Cir. 2018), details the extensive pre-trial history of Plaintiff's criminal case.  The Court therefore assumes the parties' familiarity with this history.  In brief, however, Plaintiff and his father, Joseph Tigano, Sr., were arrested on July 11, 2008 at their home on charges related to a marijuana growing enterprise.  (Am. Compl., Dkt. 14, ¶ 14.)  Plaintiff was remanded into custody, while his father was subsequently released on bail.  (*Id.* ¶¶ 15, 23.)  Plaintiff insisted verbally on the record at multiple court conferences over the ensuing years that he desired a trial and did not waive his right to speedy trial.  (*See id.*, ¶¶ 23, 25, 53.)  Nevertheless, his case faced delay after delay, including (non-exhaustively) the following:

- In 2009, the district court granted Plaintiff's father's request for an extension on pretrial motions filed by the father and the corresponding motion hearing without alerting Plaintiff.  (*Id.* ¶ 24.)  Plaintiff then commenced a hunger-strike when he was not transported to court on the original hearing date because he believed the district court had forgotten him.  (*Id.*)

- Plaintiff was forced to undergo three separate competency evaluations, each of which concluded that Plaintiff was fit to stand trial.  (*See id.* ¶¶ 25–29; *id.* ¶¶ 33–36; *id.* ¶¶ 55–61).  Two of the examinations were ordered *sua sponte* by the presiding judge and the third was requested by Plaintiff's defense counsel.  (*Id.*)  All appear to have been prompted by Plaintiff's commitment to going to trial.  (*Id.*)

---

because Plaintiff now resides here.  (*See* Amended Complaint ("Am. Compl."), Dkt. 14, ¶ 3.)  "Under the relevant provisions of the FTCA governing venue, the Government can be sued 'in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred.'"  *Ruiz ex rel. E.R. v. United States*, No. 13-CV-1241 (KAM) (SMG), 2014 WL 4662241, at *10 (E.D.N.Y. Sept. 18, 2014) (quoting 28 U.S.C. § 1402(b)).

[2] For purposes of this Memorandum & Order, the Court assumes the truth of Plaintiff's non-conclusory factual allegations.  *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

- Plaintiff also experienced delays in his transportation to and from the competency evaluations: the United States Marshals Service ("USMS") took over 20 days to transport Plaintiff to his initial evaluation and more than a month to return him from that evaluation (*id.* ¶¶ 26, 29), and later took 45 days to transport Plaintiff to his third evaluation (*id.* ¶ 57). Then, in 2014, while Plaintiff was awaiting transfer following the third evaluation, and after Plaintiff had already been in detention for almost six years, "[t]he USMS seem[ed] to have lost track of [Plaintiff] . . . , such that two pretrial conferences were held without any movement on the case and another was adjourned because [Plaintiff] was absent and the date of his return [from the facility where the third evaluation was conducted] remained uncertain." *Tigano*, 880 F.3d at 610. Plaintiff was finally returned to the court on July 30, 2014, three months after he was released from medical hold on May 2, 2014. *Id.*; (*see also* Am. Compl., Dkt. 14, ¶ 61).

- The presiding district judge referred Plaintiff's pre-trial motions to multiple magistrate judges, causing confusion and delay in their resolution as the judges were unclear of who was responsible. (*Id.* ¶¶ 37–41.) There were also a variety of other pretrial motion and discovery delays, as well as multiple delays due to the court's congested schedule. (*Id.* ¶¶ 42, 46); *Tigano*, 880 F.3d at 615.

- Court reporters took an extremely long time to provide transcripts,[3] including, in one instance, 2,194 days to produce the transcript of Plaintiff's arraignment, and, in another, 117 days to produce a transcript that the parties needed in order to complete briefing on a motion, thus delaying the filing of motion papers by roughly four months. (Am. Compl., Dkt. 14, ¶¶ 44–45); *Tigano*, 880 F.3d at 608, 614 n.3.

- The government requested multiple adjournments for the purpose of plea negotiations, and repeatedly failed to provide a written agreement despite promising one. (Am. Compl., Dkt. 14, ¶¶ 48–51.) Ultimately, the "government waited nearly a year to present [Plaintiff with] a written plea offer," in part because the Assistant United States Attorney ("AUSA") assigned to Plaintiff's case "was involved in a major criminal trial" and Plaintiff's case "had taken a definitive back seat within the U.S. Attorney's office." *Tigano*, 880 F.3d at 609. Plea negotiations also dragged because the government demanded that Plaintiff and his father plead in a "two-for-one" deal, a condition the government ultimately abandoned. (Am. Compl., Dkt. 14, ¶¶ 48–51.)

Plaintiff also moved to have his case severed from his father's so that he could get a speedy

trial, but the district court denied his motion. (*Id.* ¶ 33.) In January 2015, Plaintiff's case was

---

[3] Plaintiff identifies only court reporters as being responsible for the delay in the production of transcripts. While, as it must, the Court accepts as true the Amended Complaint's factual allegations, the Court notes that Plaintiff's identification of court reporters as being solely responsible for the delay in producing transcripts borders on a conclusory allegation, since there are other persons or reasons that could have contributed to such delays.

transferred to Judge Elizabeth A. Wolford, United States District Judge for the Western District of New York. (*Id.* ¶ 65.) Plaintiff was finally tried in May of that year and convicted on five of the six counts charged. (*Id.* ¶¶ 18–19); *Tigano,* 880 F.3d at 605. He had been incarcerated in local jails from the time of his arrest until his conviction. (Am. Compl., Dkt. 14, ¶ 16.) Plaintiff was sentenced to 20 years' imprisonment, the mandatory minimum. (*Id.* ¶ 19.) Plaintiff appealed, and on November 15, 2017, the Circuit overturned his conviction and ordered him released, following up with a full decision on January 23, 2018. (Am. Compl., Dkt. 14, ¶¶ 20–21.) The Circuit's opinion overturning Plaintiff's conviction on speedy-trial grounds noted that the pretrial detention

> appears to be the longest ever experienced by a defendant in a speedy trial case in the Second Circuit. [Plaintiff]'s experience is an extreme outlier even among the severe examples found within Sixth Amendment case law. Yet no single, extraordinary factor caused the cumulative seven years of pretrial delay. Instead, the outcome was the result of countless small choices and neglects, none of which was individually responsible for the injustice suffered by [Plaintiff], but which together created this extreme instance of a Sixth Amendment violation. A review of the procedural history reveals that [Plaintiff] was the victim of poor trial management and general indifference at every level toward this low-priority defendant in a straightforward case.

*Tigano*, 880 F.3d at 606.

## II.   Procedural History

On June 5, 2019, roughly a year-and-a-half after his release, Plaintiff filed this case, bringing a variety of *Bivens* and FTCA claims against Defendants. (*See generally* Complaint, Dkt. 1.) On August 19, 2019, Defendants filed a pre-motion conference letter seeking to dismiss the Complaint (Dkt. 10), and the Court held a pre-motion conference on October 11, 2019, at which it set a schedule for Plaintiff to file his amended complaint and for Defendants to file their motion to dismiss (10/11/19 Minute Entry). Plaintiff filed the Amended Complaint on October 29, 2019, alleging nine claims against the United States under the FTCA and six *Bivens* claims each against Defendants Flynn and Hochul, as well as against a John or Jane Doe employee of the USMS, and

a John or Jane Doe employee of the Court Reporters of the Western District of New York, for a total of thirty-three claims.  (Am. Compl., Dkt. 14, ¶¶ 70–281.)  After several extensions, the instant motion to dismiss was fully briefed on May 29, 2020.  (Dkts. 22–25.)

## LEGAL STANDARD

### I.   Motions Under Fed. R. Civ. P. 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "When a defendant moves to dismiss for lack of standing, our standard of review depends on whether the defendant brings a 'facial' challenge, 'based solely on the allegations of the complaint' or a 'fact-based' challenge, 'proffering evidence beyond the [p]leading.'"  *Sonterra Capital Master Fund Ltd. v. UBS AG*, 2020 WL 1544478, at *2 (2d Cir. Apr. 1, 2020) (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016)).  "In a fact-based challenge, a defendant must proffer evidence beyond what is alleged in or attached to the complaint." *Amaya v. Ballyshear LLC*, 340 F. Supp. 3d 215, 219 (E.D.N.Y. 2018) (citing *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 n.6 (2d Cir. 2001)).  "In opposition to such a motion, the plaintiff[] will need to come forward with evidence of [his] own to controvert that presented by the defendant . . . ." *Carter*, 822 F.3d at 57.  Or, a plaintiff "may instead rely on the allegations in their pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017) (internal quotation marks, alterations, and citation omitted).  "[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quoting *APWU v. Potter*, 343 F.3d 619, 627

(2d Cir. 2003)).  "[T]he party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'"  *Id.* (quoting *Makarova*, 201 F.3d at 113).

## II.  Motions Under Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

"Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted); *see also Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).  In addressing the sufficiency of a complaint, courts are required to accept the well-pleaded factual allegations contained within the complaint as true, *see Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012), but "need not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations," *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Additionally, "a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *Id.* at 405–06 (citing *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995)).

## DISCUSSION

I.    **Prosecutorial Immunity and Plaintiff's *Bivens* Claims Against Defendants Flynn and Hochul**

As a preliminary matter, Defendants Flynn and Hochul contend that they are entitled to absolute immunity on Plaintiff's *Bivens* claims against them.[4]   Prosecutors performing core prosecutorial functions are entitled to absolute immunity from suit, *see Warney v. Monroe Cnty.*, 587 F.3d 113, 120–21 (2d Cir. 2009) (citing *Imbler*, 424 U.S. at 430–31), "because their prosecutorial activities are 'intimately associated with the judicial phase of the criminal process, and thus [are] functions to which the reasons for absolute immunity apply with full force,'" *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir 2010) (alteration in original) (quoting *Imbler*, 424 U.S. at 430).   Prosecutorial functions protected by absolute immunity include decisions such as "whether to present a case to a grand jury, . . . whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present." *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012).   The Supreme Court has "made clear that absolute immunity may not apply when a prosecutor is not acting as 'an officer of the court,' but is instead engaged in other tasks, say, investigative or administrative tasks." *Van de Kamp v. Goldstein*, 555 U.S. 335, 342(2009) (citing *Imbler*, 424 U.S. at 431 n.33).   A prosecutor who engages in such activities is protected only by qualified immunity. *Sclafani v. Spitzer*, 734 F. Supp. 2d 288, 296 (E.D.N.Y. 2010) (citing *Van de Kamp*, 129 S. Ct. at 861).

Plaintiff argues that absolute immunity is not due to Defendants Flynn and Hochul because they were engaged in "administrative" tasks when overseeing his prosecution.   (Plaintiff's

---

[4] Though Defendants characterize prosecutorial immunity as a jurisdictional ground for dismissal under Rule 12(b)(1), prosecutorial immunity is treated as a common law immunity available upon a Rule 12(b)(6) motion. *See, e.g.*, *Imbler v. Pachtman*, 424 U.S. 409, 419–22 (1976); *Bouchard v. Olmsted*, 775 F. App'x 701, 702–03 (2d Cir. 2019) (summary order).

Memorandum of Law in Opposition to the Motion to Dismiss ("Pl.'s Opp'n"), Dkt. 22, at 14–15.) Plaintiff cites the "countless small choices and neglects" and "administrative delays" mentioned in the Second Circuit opinion, including the "'administrative delays' in transporting [Plaintiff] to court-ordered competency hearings," "delays in plea negotiations," delays in producing transcripts of proceedings, and "district court congestion" as examples of the administrative tasks for which Defendants Flynn and Hochul were responsible.  (*Id.*)

To the extent Plaintiff seeks to hold Defendants Flynn and Hochul accountable for the items on this list that are arguably attributable to the prosecution,[5] the Court finds that Defendants Flynn and Hochul are entitled to absolute prosecutorial immunity.  Both the provision of discovery and plea negotiations are core prosecutorial functions that are "intimately associated with the judicial phase of the criminal process."  *Imbler*, 424 U.S. at 430; *see Van de Kamp v. Goldstein*, 555 U.S. at 345 (noting that "*Imbler* makes clear that all [] prosecutors would enjoy absolute immunity" from a suit "on the ground that they should have found and turned over the impeachment material"); *Varricchio v. County of Nassau*, 702 F. Supp. 2d 40, 66 (E.D.N.Y. 2010) (citing *Taylor v. Kavanagh,* 640 F.2d 450, 451–52 (2d Cir. 1981) for the proposition that absolute immunity applies to a prosecutor negotiating a guilty plea).

More fundamentally, however, Plaintiff fails to connect either Defendant Flynn or Hochul to the conduct at issue so as to warrant any liability from which they would be immune.  Neither Defendant Flynn nor Hochul is mentioned in the Amended Complaint's Statement of Facts.  (*See* Am. Compl., Dkt. 14, ¶¶ 14–69.)  Instead, the Amended Complaint describes actions taken by "the

---

[5] Neither the Amended Complaint nor Plaintiff's Opposition appears to advance a theory as to why Defendants Flynn and Hochul would be responsible for the administrative delays of the U.S. Marshals "transporting [Plaintiff] to court-ordered competency hearings," the delays allegedly caused by court reporters in providing transcripts, or "district court congestion."

government," namely, withholding discovery for an indeterminate period of time (*see id.* ¶¶ 42–43), and failing to provide Plaintiff with a plea agreement for roughly a year and a half (*id.* ¶¶ 47–52).  Plaintiff appears to advance a *respondeat superior* theory of Defendants Flynn and Hochul's liability, i.e., that because they were the U.S. Attorneys for the Western District of New York during the period of his extended incarceration, they must be liable.

Plaintiff's theory, however, is foreclosed by *Bivens* pleading standards.  "Because vicarious liability is inapplicable to *Bivens* . . . suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676; *see also id.* at 675 ("[A] federal official's liability 'will only result from his own neglect in not properly superintending the discharge' of his subordinates' duties" (quoting *Dunlop v. Munroe,* 7 Cranch 242, 269, 3 L.Ed. 329 (1812)); *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) ("[A]fter *Iqbal*, there is no special rule for supervisory liability.  Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" (quoting *Iqbal*, 557 U.S. at 676)).

Plaintiff has not alleged facts showing any kind of direct involvement by Defendants Flynn and Hochul in violating Plaintiff's speedy trial rights.  (*See generally*, Am. Compl., Dkt. 14.)  The claims against each must therefore be dismissed.[6]

## II.    Plaintiff's FTCA Claims

Defendants also seek dismissal of Plaintiff's FTCA claims against the United States.  The FTCA

---

[6] Because the Court finds that Plaintiff has failed to state a *Bivens* claim against Defendants Flynn and Hochul, and because they would, in any event, be absolutely immune from such a claim, the Court does not address Defendant's arguments that *Bivens* does not extend to the conduct at issue in this case or that Plaintiff's *Bivens* claims against Defendants Flynn and Hochul are barred by the applicable statute of limitations.

> waives the United States's sovereign immunity for certain classes of torts claims and provides that the federal district courts shall have exclusive jurisdiction over damages claims against the United States for injury or loss of property, or for personal injury or death "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."

*Celestine v. Mt. Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 80 (2d Cir. 2005) (quoting 28 U.S.C. § 1346(b)(1)). Thus, while the *Bivens* claims against Defendants Flynn and Hochul must be dismissed because of prosecutorial immunity, their alleged conduct may form the basis of an FTCA claim against the United States.

Under the FTCA, the United States government waives sovereign immunity for torts committed by its employees "under circumstances where the United States, if a private person, would be liable to the [plaintiff] in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). To state a claim under the FTCA, "the plaintiff must: (1) satisfy the 'private party analog' element of an FTCA claim, and (2) set forth the elements necessary to state a comparable cause of action under state law." *Figueroa v. United States*, 739 F. Supp. 2d 138, 140 (E.D.N.Y. 2010).

The FTCA contains various exceptions that limit the Government's liability even where a private analog may be found. First, 28 U.S.C. § 2680(a) contains a "discretionary function" exception, which provides that the Government is not liable for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The exception applies only to acts that "involve an element of judgment or choice" and which are susceptible to public policy considerations. *United States v. Gaubert,* 499 U.S. 315, 323–25 (1991) (internal quotation marks omitted) (*citing Berkovitz v. United States,* 486 U.S. 531, 536 (1988)).

Second, the FTCA excludes claims arising out of certain intentional torts: "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights[.]"  28 U.S.C. § 2680(h).  "However, the 'law enforcement proviso' in [28 U.S.C. § 2680(h)] nonetheless subjects the Government to claims against investigative or law enforcement officers arising out of 'assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.'"  *Saleh v. United States*, No. 12-CV-4598 (KBF), 2013 WL 5439140, at *8 (S.D.N.Y. Sept. 27, 2013) (quoting 28 U.S.C. § 2680(h)), *aff'd*, 580 F. App'x 22 (2d Cir. 2014).

It is slightly challenging to distinguish between Plaintiff's multiple FTCA claims and to identify the underlying private party analog claims that he is alleging in each.  While the Amended Complaint lists nine separate causes of action under the FTCA (*see* Am. Comp., Dkt. 14, ¶¶ 70–281), Plaintiff in his Opposition to Defendants' Motion to Dismiss frames his FTCA claims as being solely for negligent infliction of emotional distress ("NIED") and intentional infliction of emotional distress ("IIED") (*see* Pl.'s Opp'n, Dkt. 22, at 1, 9–13).  It is thus unclear to what degree, if at all, Plaintiff is pursuing the other claims that he raised in the Amended Complaint.  The Court nonetheless addresses all of the claims it construes Plaintiff as asserting in this action, and finds that they must all be dismissed.

## A.    IIED

Plaintiff clearly advances a claim for intentional infliction of emotional distress.  "Under New York Law, [IIED] has four elements: '(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial possibility of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.'"  *Saleh*, 2013 WL 5439140, at *11 (quoting *Howell v. N.Y. Post Co.,* 81 N.Y.2d 115, 121 (1993)).  "Whether the alleged conduct is sufficiently extreme and outrageous is a matter of law for the courts to decide."

*Frigerio v. United States*, No. 10-CV-9086 (SAS), 2011 WL 3163330, at *9 (S.D.N.Y. July 22, 2011).  The extreme and outrageous requirement is met "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.  This standard is rigorous and difficult to satisfy."  *Id.* (internal quotation marks and citations omitted).

"Unlike other intentional torts like slander and misrepresentation, neither intentional nor negligent infliction of emotional distress is explicitly listed as an exception to the Government's waiver of sovereign immunity for international torts under [the FTCA]."  *Saleh*, 2013 WL 5439140, at *11.  Though Plaintiff appears to concede that IIED operates as an exception to the government's FTCA waiver of sovereign immunity (*see* Pl.'s Opp'n, Dkt. 22, at 12–13), courts in this circuit have traditionally declined to decide whether IIED falls within the exceptions to the waiver, *see Saleh*, 2013 WL 5439140, at *11 (citing *Stuto v. Fleishman,* 164 F.3d 820, 827 (2d Cir. 1999)); *see also Frigerio*, 2011 WL 3163330, at *9 (stating only that "an IIED claim arising out of an act that would otherwise be barred by the [section 2680(h)] intentional torts exception is [] prohibited" (citing, *inter alia*, *Lambertson v. United States,* 528 F.2d 441, 443 (2d Cir. 1976))).

In this case, as in those cited above, it is unnecessary for the Court to decide whether the Government's waiver of sovereign immunity extends to IIED claims, because the Court finds that no IIED claim has been stated.  *See Saleh*, 2013 WL 5439140, at *11 (citing *Stuto,* 164 F.3d at 827, for the proposition that a court may analyze a plaintiff's IIED FTCA claim for sufficiency without first determining whether the tort was barred by one of the exceptions to the FTCA).  As a preliminary matter, the FTCA does not authorize suits based on the intentional actions of federal prosecutors.  *See Gonzalez v. United States*, No. 16-CV-1494 (KAM), 2018 WL 1597384, at *7 (E.D.N.Y. Mar. 31, 2018) (citing *Bernard v. United States*, 25 F.3d 98, 104 (2d Cir. 1994)).

Acknowledging as much, Plaintiff therefore premises his theory on the conduct of the U.S. Marshals and court reporters, and particularly the presumed delays by court reporters giving rise to the "significant[] and inexplicabl[e] delay[s]" of court transcripts, including one that was filed over six years beyond the date of the court appearance. (Pl.'s Opp'n, Dkt. 22, at 13 (citing *Tigano*, 880 F.3d at 614 n.3).)

With respect to the USMS, who, as law enforcement officers, are not immune for certain intentional torts, Plaintiff fails to allege any facts from which to infer that these officers engaged in any "assault, battery, false imprisonment,[7] false arrest, abuse of process, or malicious prosecution," (and nor does he allege such claims). *Saleh*, 2013 WL 5439140, at *11; *see generally* Am. Compl., Dkt. 14.) He does not allege that the USMS put him in fear of or subjected him to any kind of harmful or offensive conduct. *See D.K. by L.K. v. Teams*, 260 F. Supp. 3d 334, 364 (S.D.N.Y. 2017) ("Under New York law, 'an "assault" is an intentional placing of another person in fear of imminent harmful or offensive contact. A "battery" is an intentional wrongful physical contact with another person without consent.'" (quoting *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001))). Plaintiff similarly fails to allege any facts to support claims of false arrest and malicious prosecution. *See Salem*, 2018 WL 3650132, at *3 (plaintiff asserting false arrest and imprisonment claims must demonstrate, *inter alia*, lack of probable cause for his arrest and imprisonment); *Gonzalez*, 2018 WL 1597384, at *12 (malicious prosecution requires the plaintiff to prove, *inter alia*, lack of probable cause). Nor has Plaintiff alleged the facts required for a claim of abuse of process. *See Gonzalez*, 2018 WL 1597384, at *14 (abuse of process claim requires

---

[7] As discussed *infra*, Plaintiff appears to bring, but fails to state, a claim for excessive imprisonment, a distinct claim from the tort of false imprisonment, which, under New York law, is substantively the same as a claim for false arrest. *Salem v. City of New York*, No. 17-CV-4799 (JGK), 2018 WL 3650132, at *3 (S.D.N.Y. Aug. 1, 2018).

that law enforcement officer has (1) "employed regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process" (quoting *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003))).  Rather, as discussed further below, Plaintiff's claims sound in negligence rather than intentional misconduct.  Thus, Plaintiff's IIED claim based on conduct of the USMS must be dismissed.

With respect to the court reporters, Defendants argue that "actions by non-law enforcement officers concerning court transcripts cannot be the basis for an intentional tort claim against the United States."  (Defendants' Reply Brief ("Defs.' Reply."), Dkt. 25, at 7.)  The Court is unsure of the basis for Defendants' claim, as 28 U.S.C. § 2680(h) appears to exempt only the enumerated torts (and those that arise out of them) from the FTCA's waiver of immunity.  *See* 28 U.S.C. § 2680(h); *see also Simone v. United States*, No. 09-CV-3904 (PKC), 2015 WL 419691, at *23 (E.D.N.Y. Jan. 30, 2015) (citing *United States v. Shearer,* 473 U.S. 52, 55 (1985) for the principle that 28 U.S.C. § 2680(h) "excludes any claim *arising out of*" the enumerated torts), *aff'd*, 642 F. App'x 73 (2d Cir. 2016).  Indeed, other courts have assumed the validity of IIED claims against non-law enforcement defendants.  *See, e.g.*, *Marley v. Ibelli*, 203 F. Supp. 2d 302, 311 (S.D.N.Y. 2001) (dismissing FTCA IIED claim against Smithsonian museum administrator coworker who had harassed plaintiff for failure to show extreme and outrageous conduct, rather than as part of the group dismissal of claims precluded by the enumerated torts exception), *aff'd*, 52 F. App'x 564 (2d Cir. 2002).

However, the Court need not determine whether Plaintiff could hypothetically state a FTCA claim for IIED based on the conduct of the court reporters, because even assuming that such a claim is permitted under the FTCA, Plaintiff has failed to allege the necessary elements of an

IIED claim as to the court reporters.  First, while filing a transcript six years late is indeed outrageous, it cannot be "regarded as atrocious, and utterly intolerable in a civilized society." *Frigerio*, 2011 WL 3163330, at *9; *see also Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) (affirming that IIED is a "highly disfavored tort under New York law . . . to be invoked only as a last resort" (citations omitted)).  Second, Plaintiff "fails to plead, except in conclusory fashion," intent on the part of the court reporters.  *Maragh v. Roosevelt Island Operating Corp.*, No. 16-CV-7530 (JMF), 2018 WL 6573452, at *6 (S.D.N.Y. Dec. 13, 2018) (dismissing IIED claim for failure to adequately plead the outrageous element, but noting other deficiencies in the claim).  Plaintiff does not allege any facts tending to show that the court reporters who produced the transcripts at issue, either individually or collectively, had the requisite "intent to cause, or disregard of a substantial possibility of causing [him], severe emotional distress."  *Saleh*, 2013 WL 5439140, at *11.  Thus, because Plaintiff has failed to allege either sufficiently egregious conduct or the requisite intent, his IIED claim fails.

### B.    NIED

Plaintiff's other core claim is a claim for negligent infliction of emotional distress.  "There are different types of NIED claims[.]"  *Abdel-Karim v. EgyptAir Airlines*, 116 F. Supp. 3d 389, 411 (S.D.N.Y. 2015*), aff'd sub nom. Abdel-Karim v. Egyptair Holding Co.*, 649 F. App'x 5 (2d Cir. 2016).  As relevant here, however, a plaintiff may seek recovery "based on the theory that 'when there is a duty owed by defendant to plaintiff, breach of that duty resulting directly in emotional harm is compensable even though no physical injury occurred.'"  *Id.* (quoting *Taggart v. Costabile*, 14 N.Y.S.3d 388, 395 (App. Div. 2015)).  The emotional harm must be a "direct, rather than a consequential, result of the breach" and the claim must possess "some guarantee of genuineness."  *Ornstein v. N.Y.C. Health & Hosps. Corp.*, 10 N.Y.3d 1, 6 (2008) (citations omitted); *see also Figueroa*, 739 F. Supp. 2d at 140 (explaining that to state an FTCA claim, a

15

plaintiff must "set forth the elements necessary to state a comparable cause of action under state law.").

Defendants advance three primary arguments as to why Plaintiff's claim fails: first, that Plaintiff has failed to plead the existence of a duty that Defendants owed to Plaintiff and breached (Defendants' Memorandum in Support of the Motion to Dismiss ("MTD"), Dkt. 24, at 22–23); second, that Plaintiff has failed to sufficiently allege that the putative breach caused him mental injury or unreasonably endangered his physical safety[8] (*id*. at 22); and third, that Plaintiff has failed to allege the "extreme and outrageous" conduct required to plead NIED (Defs. Reply, Dkt. 25, at 7–8).

Addressing the third argument first, the Court notes that outrageous conduct is not an essential element of an NIED claim. While certain courts in this district cited by both Plaintiff and Defendants previously held that "[u]nder New York law, the tort[] of . . . negligent infliction of emotional distress [requires, *inter alia*,] extreme and outrageous conduct," *see Simpson ex rel. Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d 122, 134 (E.D.N.Y. 2010), New York courts have since disavowed the "extreme and outrageous conduct" requirement, *see Taggart,* 14 N.Y.S.3d at 398 ("[W]e now clarify that, notwithstanding case law to the contrary, extreme and outrageous conduct is not an essential element of a cause of action to recover damages for negligent infliction of emotional distress. Our conclusion is consistent with the Court of Appeals'[s] formulation of the cause of action alleging negligent infliction of emotional distress, which makes no mention of extreme and outrageous conduct."); *see also Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 594 n.12 (S.D.N.Y. 2018) ("'Extreme and outrageous' conduct is not a

---

[8] While Defendants describe the endangerment of physical safety standard, they do not explicitly make this argument. (*See* MTD, Dkt. 24, at 22.) Plaintiff, however, addresses this issue in his response papers. (*See* Pl.'s Opp'n, Dkt. 22, at 4.)

necessary element of a claim for negligent infliction of emotional distress."), *aff'd*, 765 F. App'x 586 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 221(2019).  Thus, to the extent Defendants seek dismissal of Plaintiff's claim based on the failure to plead extreme and outrageous conduct, the Court rejects that basis.

Defendants also contend that Plaintiff has failed to plead a specific duty that Defendants owed him and then breached.  "The duty in [an NIED case] must be specific to the plaintiff, and not some amorphous, free-floating duty to society."  *Prado v. Perez*, 451 F. Supp. 3d 306, 318 (S.D.N.Y. 2020) (quoting *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996)).  Plaintiff appears to advance two theories as to the specific duty element of his NIED claim: (1) that state officials in New York have a duty to protect incarcerated people in their care from reasonably foreseeable risk of harm, both because the state owes a duty to those it incarcerates and because, on an individual level, state officials "assume" a duty of care towards individuals in their custody; and (2) that the Speedy Trial Act creates a duty for Defendants to ensure that Plaintiff proceeds to trial.  (Pl.'s Opp'n, Dkt. 22, at 6–8.)  Specifically, Plaintiff claims that

> the USMS owed a duty to proceed with reasonable care towards a prisoner placed into its custody by timely transporting him to court-ordered competency hearings; the US Attorney owed a duty to engage in timely competency evaluations, plea negotiations and prosecution of [Plaintiff]'s case; and the court reporters owed a duty to provide transcripts of court proceedings in a timely manner.

(*Id.* at 7.) Defendants counter that the "duty to timely transport [P]laintiff to a court-ordered competency hearing" and the "duty [to] insure that plaintiff was not subject to unreasonably prolonged detention" are not "specific" to Plaintiff.  (Defs.' Reply, Dkt. 25, at 8 (quoting Am. Compl., Dkt. 14, ¶¶ 86, 93).)

New York tort law does "recognize[] an 'assumed duty' theory of liability," which provides that a defendant who "voluntarily assumes a duty to act with reasonable care toward others" is

liable "if the plaintiff relied on the defendant's undertaking and if the defendant's act or failure to act placed the plaintiff in a more vulnerable position than if the obligation had not been assumed." *Anson v. United States*, 294 F. Supp. 3d 144, 162 (W.D.N.Y. 2018) (collecting cases); *see also Kloner v. United States*, 196 F. Supp. 3d 375, 386 (E.D.N.Y. 2016) ("An assumed duty arises 'only where (1) the failure to exercise due care increases the risk of harm to the plaintiff or (2) the harm is suffered because of the plaintiff's reliance on the undertaking.'" (quoting *Tavarez v. Lelakis*, 143 F.3d 744, 747 (2d Cir. 1998))). However, "[w]here there is no evidence that a defendant's actions either placed the plaintiff in a more vulnerable position or caused the plaintiff to detrimentally rely on the defendant, courts have held as a matter of law that the defendant did not assume a duty of care." *Id.* at 387.

At least one court in this Circuit has found that the USMS can assume a duty of care toward incarcerated individuals when undertaking to transport them. *See Anson*, 294 F. Supp. 3d at 162 (finding that USMS deputies "voluntarily assumed a duty to act with reasonable care toward the prisoners they transported"); *see also Parvi v. City of Kingston*, 41 N.Y.2d 553, 559–60 (1977) (finding that police officers who arrested a drunk man had breached their assumed duty to him by releasing him close to a highway and not orienting him, such that he was then struck by a car). The logic of this holding, that federal officers who undertake to fulfill a certain role toward a criminal defendant owe a duty to that defendant, would seem to apply not only to the USMS but also, as Plaintiff notes, to the prosecutors who undertake to pursue charges against individuals,[9]

---

[9] While the FTCA "does not authorize suits for intentional torts based upon the actions of Government prosecutors," *Bernard*, 25 F.3d at 104, it is not immediately apparent to the Court that the FTCA cannot support a claim against prosecutors for negligence not arising out of an intentional tort. To support their argument that prosecutors do not owe a specific duty to those whom they prosecute, Defendants cite, *inter alia*, *McCray v. City of New York*, No. 03-CV-10080 (DAB), 2007 WL 4352748 (S.D.N.Y. Dec. 11, 2007), in which the district court found that the defendant police officials and prosecutors did not owe a special duty not due to the general public

and the court reporters who undertake to provide them with transcripts.[10]  *Cf. Newton v. City of New York*, 566 F. Supp. 2d 256, 281 (S.D.N.Y. 2008) (finding that plaintiff had, for the purposes of supporting a claim for negligent misrepresentation, sufficiently alleged a "special relationship and duty" to him from the employees of the district attorney's office prosecuting him who evaluated a rape kit); *Bryant v. State*, 805 N.Y.S.2d 634, 636 (App. Div. 2005) (finding that plaintiff employer could bring a negligence claim on an assumed duty of care theory against the state Department of Labor, which had agreed to recruit, screen, and interview prospective employees free of charge, to recover damages sustained as a result of theft by Department-recommended employee).  The Court therefore assumes, without deciding, that Plaintiff has alleged some duties owed specifically to him and assumed by the USMS, prosecutors, and court reporters who worked on his case, and that these duties do not run afoul of the private analog requirement.  *See Anson*, 294 F. Supp. 3d at 162.

---

to the plaintiffs whom they arrested and prosecuted (and who were later determined to be innocent of the charged crimes).  (MTD, Dkt. 24, at 23 (citing *McCray*, 2007 WL 4352748, at *29).)  Because, as discussed *infra*, the Court assumes, without deciding, that a special duty was owed to Plaintiff by the government authorities under the circumstances of this case, it does not resolve the reasoning or applicability of the *McCray* decision.  The Court notes, however, that the focus in *McCray*, including the parties' briefing and the court's decision, was not on the plaintiff's NIED claim, but on the parties' numerous other claims.  Thus, even if the Court were to address the merits of the special duty issue, it would not be inclined to rely on *McCray*.

!

[10]The Court notes that New York law requires court reporters to provide transcripts with "reasonable diligence."  *See* N.Y. Judiciary Law § 302 ("Every stenographer in a court of record must, upon request, furnish, with all reasonable diligence, to the defendant in a criminal case, or a party, or his attorney in a civil cause, a copy, written out at length from his stenographic notes, of the testimony and proceedings, or a part thereof, upon the trial or hearing, upon payment, by the person requiring the same, of the fees allowed by law.").  A statute may confirm a duty for the purposes of an NIED claim, *see Dana v. Oak Park Marina, Inc.,* 230 A.D.2d 204, 208 (1997), and the Court therefore assumes that Plaintiff could allege a specific duty on the part of the court reporters on this basis, as an alternative to the assumed duty theory.

However, even assuming that the USMS, prosecutors, and court reporters owed Plaintiff a duty, he has failed to show that they breached that duty. "Once a duty is voluntarily undertaken, it must be performed with due care." *Bryant*, 805 N.Y.S.2d at 636. "In determining whether a cause of action lies in such instances, the query always is whether the putative wrongdoer has advanced [some action] to such a point as to have launched a force or instrument of harm, or has stopped [such action] where inaction is at most a refusal to become an instrument of good." *Heard v. City of New York*, 82 N.Y.2d 66, 72 (1993) (internal quotation marks and citation omitted). Plaintiff has not demonstrated that the separate delays in processing his criminal case—i.e., the prosecutor delaying the plea offer by nearly a year,[11] the USMS delaying his transportation to or from the mental health examinations by a total of approximately six and a half months, and the court reporters delaying the provision of necessary transcripts[12] by almost four months—breached any duty owed to him by these federal officers. The Court simply cannot find that these delays were of such an extent or nature as to "have launched a force or instrument of harm, or [have amounted to a] . . . refusal to become an instrument of good," or that they were so unreasonable as to constitute a breach of an assumed duty to timely process Plaintiff's criminal case. *Heard*, 82 N.Y.2d at 72. Nor did these delays place Plaintiff "in a more vulnerable position" than he was otherwise in with respect to his prosecution or physical safety. *Kloner*, 196 F. Supp. 3d at 386, 390–91. Though these delays, *combined with* the other delays caused by court congestion and

---

[11] It is difficult to find even that the prosecutors owed Plaintiff any duty with respect to the timing of their ultimately unsuccessful plea offer, since the government's decision to offer Plaintiff a plea deal, and to condition it on a "two-for-one" deal with his father, is protected by the discretionary function exception, in that it involves an element of judgment, was not compelled by regulation, and is susceptible to policy analysis. *See Fernandini v. United States*, No. 15-CV-3843 (GHW), 2019 WL 1033797, at *2–3 (S.D.N.Y. Mar. 5, 2019).

[12] As discussed *infra* in note 15, the Court considers only the transcript delays that Plaintiff alleges slowed the processing of his case.

Plaintiff's own attorneys, may have placed Plaintiff in a vulnerable position with respect to his mental and emotional status, that fact does not render the conduct of the federal officers deficient to the point of constituting a breach of any duty they owed to Plaintiff.  As such, Plaintiff has failed to allege a breach of duty.

Furthermore, Plaintiff has failed to sufficiently allege causation, i.e., that his mental injury (and resulting damages) were direct consequences of the federal officers' negligence.  "In addition to the breach of duty, the plaintiff must show that he sustained 'mental injury' as a 'direct, rather than a consequential, result of the negligence, and that the claim of emotional distress possess[es] some guarantee of genuineness.'"[13]  *Abdel-Karim*, 116 F. Supp. 3d at 411 (alteration in original) (quoting *Taggart*, 14 N.Y.S.3d at 398).  Where a third person intervenes "between the defendant's conduct and the plaintiff's injury, . . . liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence." *Taggart*, 14 N.Y.S.3d at 399 (internal citation omitted).  The Court finds that Plaintiff has not sufficiently alleged that his mental injury, namely, the anxiety resulting from his seven-year period of pre-trial

---

[13] The guarantee of genuineness element is customarily satisfied "where the particular type of negligence is recognized as providing an assurance of genuineness, as in cases involving the mishandling of a corpse or the transmission of false information that a parent or child had died." *Taggart*, 14 N.Y.S.3d at 398 (internal quotation marks and citations omitted).  "[I]n the absence of such specific circumstances, the guarantee of genuineness generally requires that the breach of the duty owed directly to the injured party must have at least endangered the plaintiff's physical safety or caused the plaintiff to fear for his or her own physical safety." *Id.*  Here, the Court finds that the Second Circuit's decision to overturn Plaintiff's conviction and release him from custody, based, in part, on Plaintiff's "anxiety and the oppressiveness of [his] lengthy period of pretrial incarceration," implicitly provides some guarantee of genuineness with respect to Plaintiff's mental injury for his NIED claim. *See Tigano*, 880 F.3d. at 618–19 ("Nearly seven years of delay in a trial the AUSA described as 'very simple' imposes an inexcusable amount of anxiety on the unconvicted defendant." (internal record citation omitted) (noting that Plaintiff repeatedly expressed his anxiety to the district court and explicitly cited that anxiety as the primary motivation for his desire for a speedy trial)).  That element of his NIED claim is therefore met at this stage.

detention, was "a direct, rather than a consequential, result of the breach [of Defendants' duty]." *Taggart*, 14 N.Y.S.3d at 398 (internal quotation marks and citation omitted).

Based on the allegations in the Amended Complaint, even liberally construed, the majority of the seven-year pre-trial detention period was not attributable to the conduct of the federal officers.[14]  Rather, when the time that it took for the USMS to transport Plaintiff to and from competency exams, the time it took for the prosecutors to provide a written plea agreement, and the time it took for the court reporters to produce the necessary transcripts[15] are all added up (and accounting for some vagueness and overlap within the Amended Complaint), they together amount to roughly 24 months—around two years, and significantly less than half, of Plaintiff's almost seven-year pre-trial detention.  *See Tigano*, 880 F.3d at 606–10, 614–15; (Am. Compl., Dkt. 14, ¶¶ 14–63).  Indeed, some portion of those 24 months does not actually constitute delay, since some period of time was reasonably required to perform each of these functions.  But, even counting all 24 months as delay, given that less than half of the total pretrial delay of Plaintiff's case was caused by the conduct of federal officers, the Court cannot plausibly infer that the mental injury or anguish that Plaintiff suffered from his seven-year pretrial detention was a "direct, rather than [] consequential, result" of the federal officers' conduct, either separately or combined.  *Taggart*, 14 N.Y.S.3d at 398.  Instead, the acts of third parties, including the district court and Plaintiff's own

---

[14] Indeed, both the district court and Plaintiff's own counsel played a significant role in extending the pretrial period in the criminal case.

[15] Plaintiff fails to allege any causal relationship between the seemingly extraordinary 2,194-day delay in producing the transcript of Plaintiff's arraignment and the overall delay in his criminal case or any emotional distress he suffered as a result of the overall length of his criminal proceedings.  (*See* Am. Compl., Dkt. 14, ¶ 78.)  Similarly, Plaintiff does not allege a delay of the overall proceedings resulting from the 186 days it took to file the transcript from the preliminary exam, or the 139 day it took to file the transcript from the oral argument on pretrial motions.  (*See id.* ¶¶ 80–81.)  For this reason, the Court does not count those delays when estimating the delays attributable to federal officers.

counsel, contributed substantially to the seven-year delay and thus constituted intervening events "between the [federal officers'] conduct and the plaintiff's injury . . . [that were not] a normal or foreseeable consequence of the situation created by the [federal officers' alleged] negligence." *Taggart*, 14 N.Y.S.3d at 399.  To be sure, the facts found by the Circuit and alleged by Plaintiff are sufficient to show that the mental anguish Plaintiff suffered as a result of his seven-year pretrial confinement was a "consequential result" of the federal officers' conduct, but the role of intervening third parties, such as the court and Plaintiff's counsel, in causing the bulk of the injurious delay—which the federal officers could neither control nor foresee—forecloses the possibility that the federal officers "directly" caused Plaintiff's injury.[16]

Plaintiff might argue that he is not alleging a single monolithic injury caused by the entire seven years of delay, but rather a series of discrete and distinct mental injuries, some resulting directly from the conduct of federal officers.  But the flaw in this argument is that the mental injury that has any "guarantee of genuineness" in this case cannot be divided up into separate injuries resulting from discrete delays; it is necessarily based on the cumulative effect of the seven years of delay to which Plaintiff was subjected.  Plaintiff cannot demonstrate, for example, that the emotional distress he felt during the one-year period in which the prosecution delayed providing him with a written plea offer was due solely to that delay, as opposed to the cumulative effect of the four years of delay that preceded it, which resulted from the actions of many participants in the criminal process.  Furthermore, standing alone, these discrete acts of delay, such as the one-year

---

[16] While New York law recognizes joint and several liability as to multiple tortfeasors who *cause* a single indivisible injury, *see Ravo v. Rogatnick*, 514 N.E.2d 1104 (1987); *Mazyck v. Long Island R. Co.*, 896 F.Supp. 1330, 1333 (E.D.N.Y.1995) ("The law is clear that where there is but one indivisible injury caused by the joint or concurrent acts of two or more tortfeasors, each tortfeasor is jointly and severally liable for the entire amount of damages." (citation omitted)), that concept is inapplicable here, because the mental injury claimed by Plaintiff cannot be causally connected to the federal officers' conduct, such that they can be deemed tortfeasors.

plea-offer delay or the several month delay in returning Plaintiff from his competency evaluation, do not sufficiently guarantee the genuineness of the existence of Plaintiff's mental injury.

Because the seven-year delay in taking Plaintiff to trial was the result of "countless small choices and neglects" and not caused by any "single, extraordinary factor," *Tigano*, 880 F.3d at 606, Plaintiff will not be able to show that any injury he suffered as a result of his excessive pretrial detention was the direct result, or a reasonably foreseeable consequence, of negligence by prosecutors, the USMS, or court reporters. His NIED claim must therefore be dismissed for lack of sufficient allegations to show causation.[17]

### C.   Constitutional Torts

To the extent Plaintiff maintains additional claims under the FTCA for violations of his Fourth, Fifth, Sixth and Eighth Amendment rights (*see* Am. Comp., Dkt. 14, ¶¶ 70–108, 206–11), those too must be dismissed.[18]   "The FTCA has not waived [the Government's] sovereign immunity with respect to claims that its employees have committed constitutional torts under the federal constitution."   *Hernandez v. United States*, 939 F.3d 191, 205 (2d Cir. 2019) (internal

---

[17] Defendants also move for dismissal of the general negligence FTCA claim in Plaintiff's complaint.   "The elements of a negligence claim under New York law are: '(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach.'"   *Pasternack v. Lab. Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir. 2015) (citing, *inter alia*, *Merino v. N.Y.C. Transit Auth.*, 639 N.Y.S.2d 784 (App. Div. 1996)).   While Plaintiff appears to represent in his Opposition that he does not raise a negligence claim separate and apart from his NIED claim (*see* Pl.'s Opp'n, Dkt. 22, at 9), the Court notes that any freestanding negligence claim would fail for the same reasons as his NIED claim, namely that Plaintiff has not sufficiently alleged breach of a duty or that his injuries were "substantially caused" by any of the putative breaches of duty he catalogues.

[18] The Court also notes that Plaintiff has not responded to Defendants' arguments for dismissal of these claims (*see generally* Pl.'s Opp'n, Dkt. 22), and thus has abandoned them, *see Rohn Padmore, Inc. v. LC Play Inc.*, 679 F. Supp. 2d 454, 459 (S.D.N.Y. 2010) ("Where one party fails to respond to an opposing party's argument that its claim must be dismissed, courts may exercise their discretion and deem the claim abandoned" (citation omitted)).

quotation marks and citation omitted).  The Supreme Court has held that for a claim to be actionable against the United States under the FTCA, a claimant "must allege, *inter alia*, that the United States 'would be liable to the claimant' as 'a private person' 'in accordance with the law of the place where the act or omission occurred.'  However, '[a] constitutional tort claim . . . could not contain such an allegation' by definition."  *Gonzalez*, 2018 WL 1597384, at *5 (quoting *FDIC v. Meyer*, 510 U.S. 471, 477 (1994)).  Because Plaintiff's claims under the Fourth, Fifth, Sixth and Eighth Amendments have no private analog, they are barred by sovereign immunity and must be dismissed.

### D.    The Speedy Trial Act

Plaintiff also appears to raise an FTCA claim for negligent violation of the Speedy Trial Act (*see* Am. Compl., Dkt. 14, at ¶¶ 109–13), though again, Plaintiff's failure to respond to Defendants' arguments for dismissal of this claim means that the Court may find that he has abandoned it, *see Rohn Padmore, Inc.*, 679 F. Supp. 2d at 459.  In any event, just as no private analog exists for Plaintiff's constitutional claims, *see Gonzalez*, 2018 WL 1597384, at *5, there is no private analog for Plaintiff's Speedy Trial Act claim.  As such, it must be dismissed.  *See Akol v. Carney*, No. 20-CV-26 (SPB), 2020 WL 3034830, at *2 (W.D. Pa. June 5, 2020) (finding that the "federal 'Speedy Trial Act' . . . does [not] afford a private right of action to aggrieved individuals); *Neal v. United States*, No. 12-CV-01327 (AWI) (BAM), 2014 WL 172545 at *6 (E.D. Ca. Jan. 15, 2014) (finding compensatory damages not available for a speedy trial claim); *Mousseaux v. U.S. Comm'r of Indian Affairs*, 806 F. Supp. 1433, 1437–38 (D.S.D. 1992*), aff'd in part, remanded in part on other grounds sub nom. Mousseaux v. United States*, 28 F.3d 786 (8th Cir. 1994) (dismissing a claim for damages for Speedy Trial Act violations and finding that "the criminal defendant's remedy is to request that the court dismiss the charges against him and, in

some cases, punish the offending attorney with fines or a prohibition against practicing in the federal court issuing the order").

### E.   Unreasonably Prolonged Detention

To the extent Plaintiff brings an FTCA claim for unreasonably prolonged detention, that too must be dismissed for failure to state a claim.[19]  To do so, a plaintiff "must allege that (1) [he or] she has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, (2) the actions of the [law enforcement officials] violated that right, and (3) the [law enforcement officials'] conduct 'shocks the conscience.'"  *Ying Li v. City of New York,* 246 F. Supp. 3d 578, 622 (E.D.N.Y. 2017) (citation omitted).  Because, as Defendants note (MTD, Dkt. 24, at 23–24), Plaintiff has not alleged that any law enforcement officials mishandled or suppressed exculpatory evidence, no claim for unreasonably prolonged detention lies.[20]

### F.   Negligent Hiring and Supervision Claims

Plaintiff's negligent hiring and supervision claims must also be dismissed.  Multiple courts in this circuit have found that claims for negligent hiring and supervision fall squarely within the FTCA's discretionary function exception, discussed *supra*.  *See Needham v. United States*, No. 17-CV-05944 (ER), 2018 WL 3611944, at *4 (S.D.N.Y. July 27, 2018) (collecting cases and

---

[19] To the extent Plaintiff's unreasonably prolonged detention claim is instead a claim that the unreasonable length of his detention violates his constitutional rights, the Court notes that, as discussed *supra*, "[t]he FTCA has not waived [the Government's] sovereign immunity with respect to claims that its employees have committed constitutional torts under the federal constitution." *Hernandez*, 939 F.3d at 205.

[20] Dismissal of this claim is also appropriate because Plaintiff has abandoned it by failing to respond to Defendants' arguments for dismissal.  *See Rohn Padmore, Inc.*, 679 F. Supp. 2d at 459.

dismissing plaintiff's claims for negligent hiring under Fed. R. Civ. P. 12(b)(1)).  As the D.C. Circuit outlined in *Burkhart v. Washington Metropolitan Area Transit Authority*, 112 F.3d 1207 (D.C. Cir. 1997), hiring and supervision claims involve both judgment and public policy considerations:

> The hiring decisions of a public entity require consideration of numerous factors, including budgetary constraints, public perception, economic conditions, individual backgrounds, office diversity, experience and employer intuition.  Similarly, supervision decisions involve a complex balancing of budgetary considerations, employee privacy rights, and the need to ensure public safety.  The extent of training with which to provide employees requires consideration of fiscal constraints, public safety, the complexity of the task involved, the degree of harm a wayward employee might cause, and the extent to which employees have deviated from accepted norms in the past.  Such decisions are surely among those involving the exercise of political, social, or economic judgment.

*Saint-Guillen v. United States*, 657 F. Supp. 2d 376, 387 (E.D.N.Y. 2009) (quoting *Burkhart*, 112 F.3d at 1217).  For the reasons explained so clearly in *Burkhart*, Plaintiff's negligent hiring and supervision claims must be dismissed.

## III.    The John Doe Defendants

Plaintiff also brings *Bivens* claims against Defendants "JOHN/JANE DOE #1 in his/her individual capacity as an employee of the United States Marshals Service, and JOHN/JANE DOE #2, in his/her individual capacity as an employee of the Court Reporters of the Western District of New York" (collectively, the "John Doe Defendants").  (Am. Compl., Dkt. 14, at 1 (case caption), ¶¶ 7–8, 166–205, 252–281.)  These Defendants have never been served and so do not move to dismiss.  Nonetheless, the Court may consider the viability of the claims against these unnamed defendants in deciding a motion to dismiss the complaint.  *Cf. Case v. Anderson*, No. 16-CV-983 (NSR), 2017 WL 11557458, at *2 (S.D.N.Y. Sept. 11, 2017) (finding it "entirely proper to consider the viability of [] claims [against John Doe defendants] when deciding a motion to dismiss in the Section 1983 context." (citing *Hogan v. Fischer*, 738 F.3d 509 (2d Cir. 2013)).

27

Here, the Court finds that dismissal of the claims against the John Doe Defendants is warranted because Plaintiff has failed to identify these defendants within the statute of limitations for the *Bivens* claims alleged against them.  "The statute of limitations for *Bivens* actions arising in New York is three years." *Tapia-Ortiz v. Doe*, 171 F.3d 150, 151 (2d Cir. 1999).  Even where a plaintiff has filed a complaint naming John Doe Defendants "within the three-year statute of limitations period, it is familiar law that 'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued." *Id.* at 151–52 (quotation marks and citation omitted).

In this case, Plaintiff's *Bivens* claims accrued at the latest when the Second Circuit overturned his conviction on January 23, 2018.  More than three years have passed since the date of Plaintiff's release, and Plaintiff has still not identified the John Doe defendants.  Accordingly, his *Bivens* claims against these Defendants must be dismissed.  *See Holmes v. United States*, No. 04-CV-7652 (GBD), 2005 WL 2298159, at *1 n.2 (S.D.N.Y. Sept. 20, 2005) (dismissing *Bivens* claims against John Doe defendants after more than three years had elapsed between date of the incident at issue and date of the order).

## CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss is granted.  Plaintiff's claims against the John Doe Defendants are also dismissed, and the Amended Complaint is dismissed in its entirety.  The Clerk of Court is respectfully directed to enter judgment and close the case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 22, 2021
      Brooklyn, New York